BRINKERHOFF-FARIS TRUST & SAVINGS COM-
PANY *v.* HILL, TREASURER AND EX-OFFICIO
COLLECTOR OF HENRY COUNTY, MISSOURI.

No. 464.   Argued May 1, 1930.—Decided June 2, 1930.

*Mr. Roy W. Rucker*, with whom *Messrs. John Montgomery, Jr.*, and *Lee Montgomery* were on the brief, for petitioner.

*Mr. Lieutellus Cunningham*, with whom *Messrs. Stratton Shartel*, Attorney General of Missouri, *N. B. Conrad, Frederick F. Wesner*, and *Charles A. Calvird, Jr.*, were on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

In 1928, the Brinkerhoff-Faris Trust & Savings Company, acting as trustee for its shareholders, brought this suit in a Missouri court against the Treasurer of Henry County, Missouri, to enjoin him from collecting or attempting to collect a certain part of the taxes assessed against them for the year 1927 on the shares of its stock; and, pending decision in this suit, to restrain the prosecution of an action already brought by him against the plaintiff for that purpose.

The bill alleged that the township assessor had intentionally and systematically discriminated against the shareholders by assessing bank stock at full value, while intentionally and systematically omitting to assess certain classes of property and assessing all other classes of property at 75 per cent or less of their value. It asserted that, to the extent of 25 per cent, the assessments were void because such discrimination violated the equal protection clause of the Fourteenth Amendment. And it recited that the plaintiff had tendered, and was continuing to tender, payment of the 75 per cent of the taxes assessed, which amount it conceded was due. As grounds for equity jurisdiction, the bill charged that relief could not be had at law, either by way of defense in the pending action brought by the Treasurer or by paying the tax in full under protest and suing for a refund of 25 per cent thereof; and that no administrative remedy for the relief

sought was, or ever had been, provided by law either by appeal or otherwise to or from the County Board of Equalization or the State Board of Equalization.

The defendant's answer denied all the allegations of discrimination and further opposed relief in equity on the grounds that the plaintiff had not pursued remedies before the County or State Board of Equalization pursuant to Articles 3 and 5 of Chapter 119 of the Missouri Revised Statutes of 1919; and that the plaintiff was guilty of laches in not so doing. The trial court refused the injunction and dismissed the bill, without opinion or findings of fact.

The Supreme Court of Missouri held, on appeal, that relief from the alleged discriminatory assessment could not be had in any suit at law; that this bill in equity was the appropriate and only remedy, unless relief could have been had by timely application to some administrative board; and that neither of the boards of equalization was charged with the power and duty to grant such relief. But, without passing definitely upon the question of discrimination, it concluded that if the plaintiff had " at any time before the tax books were delivered to the collector, filed complaint before the State Tax Commission, that body, in the proper exercise of its jurisdiction, would have granted a hearing, and would have heard evidence with respect to the valuations complained of, and, if the charges contained in the complaint had been found to be true, the valuations placed on its property would have been lowered, or that on other property raised, the property omitted from the assessment roll would have been placed thereon, and the discrimination complained of thereby removed. The remedy provided by the statute is adequate, certain, and complete." Compare *First National Bank of Greeley* v. *Weld County,* 264 U. S. 450. The court held, therefore, that, because plaintiff had this ade-

quate legal remedy, it was not entitled to equitable relief, and because plaintiff had not complained to the Tax Commission, " it was clearly guilty of laches in not so doing." On these grounds, the Supreme Court affirmed the judgment of the trial court. 323 Mo. 180.

The powers and duties of the State Tax Commission are prescribed by Article 4 of Chapter 119 of the Revised Statutes of 1919. Six years before this suit was begun, those provisions had been construed by the Supreme Court of Missouri in *Laclede Land & Improvement Co.* v. *State Tax Commission,* 295 Mo. 298. There, the court had been required to determine whether the Commission had power to grant relief of the character here sought. The Commission had refused, on the ground of lack of power, an application for relief from discrimination similar to that here alleged. The Laclede Company petitioned for a mandamus to compel the Commission to hear its complaint. The Supreme Court denied the petition, saying that it was " preposterous " and " unthinkable " that the statute conferred such power on the Commission; and that if the statute were thus construed, it would violate section 10 of article 10 of the constitution of Missouri. That decision was thereafter consistently acted upon by the Commission; and it was followed by the Supreme Court itself in later cases.[1]

---

[1] In *Boonville National Bank* v. *Schlotzhauer,* 317 Mo. 1298, where the taxpayer was represented by the same counsel who represent the plaintiff here, relief was sought by bill in equity from like discrimination, without prior application to the State Tax Commission. The Supreme Court of Missouri was required to decide whether the taxpayer had invoked the appropriate remedy; and it held, in an elaborate opinion which did not mention the Tax Commission, that the remedy pursued was the appropriate one and that the taxpayer was entitled to relief thereby, if the facts alleged were proved. See also *Jefferson City Bridge & Transit Co.* v. *Blaser,* 318 Mo. 373; *Columbia Terminals Co.* v. *Koeln,* 3 S. W. (2d) 1021; *State* v. *Baker,* 9 S. W. (2d) 589, 592-93; *State* v. *Dirckx,* 11 S. W. (2d) 38.

No one doubted the authority of the *Laclede* case until it was expressly overruled in the case at bar.[2] While the defendant's answer asserted that the plaintiff had not availed itself of the administrative remedies under Articles 3 and 5 of Chapter 119 by application to the boards of equalization and was guilty of laches in not so doing (contentions which the state court held to be unsound), the answer significantly omitted any contention that there had been a remedy by application to the State Tax Commission, whose powers are dealt with in the intervening Article 4. The possibility of relief before the Tax Commission was not suggested by anyone in the entire litigation until the Supreme Court filed its opinion on June 29, 1929. Then it was too late for the plaintiff to avail itself of the newly found remedy. For, under that decision, the application to the Tax Commission could not be made after the tax books were delivered to the collector; and this had been done about October 1, 1927.

The plaintiff seasonably filed a petition for a rehearing in which it recited the above facts and asserted, in addition to its claims on the merits, that, in applying the new construction of Article 4 of Chapter 119 to the case at bar, and in refusing relief because of the newly found powers of the Commission, the court transgressed the due

[2] The reason which prompted the Supreme Court to reëxamine and overrule the *Laclede* case is thus stated in its opinion: "It is doubtful whether the evidence in this case warrants a finding that the local assessor intentionally and systematically undervalued real estate and personal property listed with him, other than bank stock; but there can be no question but that his failure to assess sucking animals and poultry was both intentional and pursuant to system. . . . If the owners of bank stock are entitled to an abatement of a portion of their taxes because other property was undervalued, it would appear on principle that all taxpayers of the state should be entirely relieved, so far as the taxes for 1927 are concerned, because the owners of poultry were not taxed at all. It seems necessary that we rechart our course." 323 Mo. 180; 19 S. W. (2d) 746, 749.

process clause of the Fourteenth Amendment. The additional federal claim thus made was timely, since it was raised at the first opportunity. *Missouri ex rel. Missouri Ins. Co.* v. *Gehner, ante,* p. 313. The petition was denied without opinion. This Court granted certiorari, 280 U. S. 550. We are of opinion that the judgment of the Supreme Court of Missouri must be reversed, because it has denied to the plaintiff due process of law—using that term in its primary sense of an opportunity to be heard and to defend its substantive right.

*First.* It is plain that the practical effect of the judgment of the Missouri court is to deprive the plaintiff of property without affording it at any time an opportunity to be heard in its defense. The plaintiff asserted an invasion of its substantive right under the Federal Constitution to equality of treatment. *Greene* v. *Louisville & Interurban R. R. Co.,* 244 U. S. 499; *Sioux City Bridge Co.* v. *Dakota County,* 260 U. S. 441. If the allegations of the complaint could be established, the Federal Constitution conferred upon the plaintiff the right to have the assessments abated by 25 per cent. In order to protect its property from being seized in payment of the part of the tax alleged to be unlawful, the plaintiff invoked the appropriate judicial remedy provided by the State. *Second Employers' Liability Cases,* 223 U. S. 1, 55–57.

Under the settled law of the State, that remedy was the only one available. That a bill in equity is appropriate and that the court has power to grant relief, even under the new construction of the statute dealing with the Tax Commission, is not questioned.[3] And it is held by the state court in this case that no other judicial remedy is open to the plaintiff and that no administrative

---

[3] Equitable relief was denied solely on the equitable doctrines that the plaintiff had an adequate legal remedy by application to the Commission and was guilty of laches in not pursuing it.

remedy, other than that before the State Tax Commission, has been provided. But, after the decision in the *Laclede* case, it would have been entirely futile for the plaintiff to apply to the Commission. That body had persistently refused to entertain such applications; and the Supreme Court of the State had supported it in its refusal. Thus, until June 29, 1929, when the opinion in the case at bar was delivered, the Tax Commission could not, because of the rule of the *Laclede* case, grant the relief to which the plaintiff was entitled on the facts alleged. After June 29, 1929, the Commission could not grant such relief to this plaintiff because, under the decision of the court in this case, the time in which the Commission could act had long expired. Obviously, therefore, at no time did the State provide to the plaintiff an administrative remedy against the alleged illegal tax; and in invoking the appropriate judicial remedy, the plaintiff did not omit to comply with any existing condition precedent. *Montana National Bank* v. *Yellowstone County*, 276 U. S. 499, 505.

If the judgment is permitted to stand, deprivation of plaintiff's property is accomplished without its ever having had an opportunity to defend against the exaction. The state court refused to hear the plaintiff's complaint and denied it relief, not because of lack of power or because of any demerit in the complaint, but because, assuming power and merit, the plaintiff did not first seek an administrative remedy which, in fact, was never available and which is not now open to it. Thus, by denying to it the only remedy ever available for the enforcement of its right to prevent the seizure of its property, the judgment deprives the plaintiff of its property.

*Second.* If the result above stated were attained by an exercise of the State's legislative power, the transgression of the due process clause of the Fourteenth Amendment

would be obvious. *Ettor* v. *Tacoma*, 228 U. S. 148.[4] The violation is none the less clear when that result is accomplished by the state judiciary in the course of construing an otherwise valid (*First National Bank of Greeley* v. *Weld County*, 264 U. S. 450) state statute. The federal guaranty of due process extends to state action through its judicial as well as through its legislative, executive or administrative branch of government.[5]

It is true that the courts of a State have the supreme power to interpret and declare the written and unwritten laws of the State; that this Court's power to review decisions of state courts is limited to their decisions on federal questions; [6] and that the mere fact that a state court has rendered an erroneous decision on a question of state law, or has overruled principles or doctrines established by previous decisions on which a party relied, does not give rise to a claim under the Fourteenth Amendment or otherwise confer appellate jurisdiction on this Court.[7]

[4] Compare *Turner* v. *New York*, 168 U. S. 90, 94; *Saranac Land & Timber Co.* v. *Comptroller*, 177 U. S. 318, 325; *Crane* v. *Hahlo*, 258 U. S. 142, 147; *Atchafalaya Land Co.* v. *F. B. Williams Cypress Co.*, 258 U. S. 190, 197.

[5] *Ownbey* v. *Morgan*, 256 U. S. 94, 111. Compare *Pennoyer* v. *Neff*, 95 U. S. 714; *Standard Oil Co.* v. *Missouri*, 224 U. S. 270, 281; *Frank* v. *Mangum*, 237 U. S. 309, 326, 335; *Moore* v. *Dempsey*, 261 U. S. 86.

[6] *Kryger* v. *Wilson*, 242 U. S. 171, 176; *Mount St. Mary's Cemetery Ass'n* v. *Mullins*, 248 U. S. 501, 503; *Quong Ham Wah Co.* v. *Industrial Accident Comm.*, 255 U. S. 445, 448; *Fox River Paper Co.* v. *Railroad Comm.*, 274 U. S. 651, 655.

[7] *Central Land Co.* v. *Laidley*, 159 U. S. 103, 112; *Patterson* v. *Colorado*, 205 U. S. 454, 461; *Willoughby* v. *Chicago*, 235 U. S. 45, 50; *O'Neil* v. *Northern Colorado Irrigation Co.*, 242 U. S. 20, 26-7; *Dunbar* v. *City of New York*, 251 U. S. 516, 519; *Rooker* v. *Fidelity Trust Co.*, 261 U. S. 114, 118; *Tidal Oil Co.* v. *Flanagan*, 263 U. S. 444, 450; *American Railway Express Co.* v. *Kentucky*, 273 U. S. 269, 273. For " a long line of decisions " holding " that the provision of § 10, Article 1, of the Federal Constitution, protecting the obligation

But our decision in the case at bar is not based on the ground that there has been a retrospective denial of the existence of any right or a retroactive change in the law of remedies. We are not now concerned with the rights of the plaintiff on the merits, although it may be observed that the plaintiff's claim is one arising under the Federal Constitution and, consequently, one on which the opinion of the state court is not final; or with the accuracy of the state court's construction of the statute in either the *Laclede* case or in the case at bar. Our present concern is solely with the question whether the plaintiff has been accorded due process in the primary sense,— whether it has had an opportunity to present its case and be heard in its support. Undoubtedly, the state court had the power to construe the statute dealing with the State Tax Commission; and to reëxamine and overrule the *Laclede* case. Neither of these matters raises a federal question; neither is subject to our review.[8] But,

of contracts against state action, is directed only against impairment by legislation and not by judgments of courts," see *Tidal Oil Co.* v. *Flanagan*, 263 U. S. 444, 451, note 1. Likewise, with reference to *ex post facto* laws. *Kring* v. *Missouri*, 107 U. S. 221, 227; *Ross* v. *Oregon*, 227 U. S. 150, 161; *Frank* v. *Mangum*, 237 U. S. 309, 344.

[8] The process of trial and error, of change of decision in order to conform with changing ideas and conditions, is traditional with courts administering the common law. Since it is for the state courts to interpret and declare the law of the State, it is for them to correct their errors and declare what the law has been as well as what it is. State courts, like this Court, may ordinarily overrule their own decisions without offending constitutional guaranties, even though parties may have acted to their prejudice on the faith of the earlier decisions. The doctrine of *Gelpcke* v. *Dubuque*, 1 Wall. 175, and *Butz* v. *Muscatine*, 8 Wall. 575, like that of *Swift* v. *Tyson*, 16 Pet. 1, is, if applied at all, confined strictly to cases arising in the Federal courts. *Fleming* v. *Fleming* 264 U. S. 29, 31; *Tidal Oil Co.* v. *Flanagan*, 263 U. S. 444, 451; *Moore-Mansfield Const. Co.* v. *Electrical Installation Co.*, 234 U. S. 619, 624–26; *Bacon* v. *Texas*, 163 U. S. 207, 220–24; *Central Land Co.* v. *Laidley*, 159 U. S. 103, 111–12.

while it is for the state courts to determine the adjective as well as the substantive law of the State, they must, in so doing, accord the parties due process of law. Whether acting through its judiciary or through its legislature, a State may not deprive a person of all existing remedies for the enforcement of a right, which the State has no power to destroy, unless there is, or was, afforded to him some real opportunity to protect it.[9] Compare *Postal Telegraph Cable Co.* v. *Newport,* 247 U. S. 464, 475–6.

*Third.* The court's finding of laches was predicated entirely on the plaintiff's failure to apply to the State Tax Commission. In view of what we have said, this ground is not sufficient independently to support the judgment. And, as the Supreme Court of Missouri did not decide whether the allegations of the plaintiff's bill were sustained by the proof, we do not inquire into the merits of the plaintiff's claim under the equal protection clause. The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE MCREYNOLDS did not hear the argument and took no part in the decision of this case.

---

[9] Had there been no previous construction of the statute by the highest court, the plaintiff would, of course, have had to assume the risk that the ultimate interpretation by the highest court might differ from its own. Likewise, if the administrative remedy were still available to the plaintiff, there would be no denial of due process in that regard.